UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                              Case No. 3:23-CR-0478 (BKS)

v.

PATRICK DAI,

                          Defendant.
_____

**MEMORANDUM IN SUPPORT OF MR. DAI'S
APPEAL OF DETENTION ORDER**

DATED:    December 4, 2023               Respectfully submitted,
              Syracuse, New York

                                                        LISA A. PEEBLES
                                                        Federal Public Defender
                                                        4 Clinton Square, 3rd Floor
                                                        Syracuse, New York 13202
                                                        (315) 701-0080

**INTRODUCTION**

Defendant Patrick Dai was arrested on October 31, 2023, and charged by complaint with one count of making a threat using interstate commerce in violation of 18 U.S.C. § 875(c). Dkt. No. 1. After a detention hearing on November 9, 2023, Magistrate Judge Thérèse Wiley Dancks issued an order detaining Mr. Dai pending trial. Text Minute Entry Dated Nov. 17, 2023; Dkt. No. 18. Mr. Dai appeals the detention order and requests pretrial release.

**ARGUMENT**

**A.      Governing Legal Standard**

A magistrate judge's pretrial detention order is not final until it is reviewed by the appropriate district court. *United States v. Harrison*, 396 F.3d 1280, 1281 (2d Cir. 2005). When a party moves for revocation of a pretrial detention order, the district court reviews the factual findings of the magistrate judge for clear error. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). The ultimate legal determination is reviewed de novo by the district court. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). A district court reviewing a magistrate judge's bail determination "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *Leon*, 766 F.2d at 80.

**B.      The Government Was Not Authorized to Seek Detention of Mr. Dai.**

The Bail Reform Act provides that a defendant may be detained prior to trial only pursuant to 18 U.S.C. § 3142(e). *See* 18 U.S.C. § 3142(a)(4); *United States v. Dillard*, 214 F.3d 88, 90-91 (2d Cir. 2000). Section 3142(e) references Section 3142(f) for specific categories of defendants eligible for pretrial detention. *See* 18 U.S.C. § 3142(e). Before a court can detain a defendant, however, it must first hold a detention hearing. *See* 18 U.S.C. § 3142(f). Section 3142(f) authorizes a court to hold a detention hearing only "for a defendant falling into any of six categories." *Dillard*,

214 F.3d at 91 (citing 18 U.S.C. § 3142(f)). In this case, the only two categories possibly permitting the government to request a detention are (1) cases involving "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed" pursuant to Section 3142(f)(1)(A); or (2) cases involving "a serious risk that such person will flee" pursuant to Section 3142(f)(2). Neither provision applies in this case.

1.         18 U.S.C. § 3142(f)(1)(A)

    a.         **18 U.S.C. § 875(c) Is Not A "Crime of Violence."**

The government contends that 18 U.S.C. § 875(c) is a crime of violence for purposes of Section 3142(f)(1)(A). "Crime of violence" is defined in the Bail Reform Act as follows:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or]
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be use in the course of committing the offense[.]

18 U.S.C. § 3156(a)(4).[1] With respect to Section 3156(a)(4)(A), 18 U.S.C. § 875(c) is a crime of violence only if it "has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." The elements of 18 U.S.C. § 875(c) are (1) the knowing transmission in interstate commerce of a communication; (2) the communication contained a threat to injure another person; and (3) the communication was transmitted for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat. *Elonis v. United States*, 575 U.S. 723, 732, 740 (2001); *see also United States v. McCain*, No. 21-2982, 2023 WL 2335332, at *5 (2d Cir. Mar. 3, 2023) (unpublished) (adding that, "a given

---

[1] "Crime of violence" also includes "any felony under chapter 77, 109A, 110, or 117." 18 U.S.C. § 3156(a)(4)(C). The crimes listed in those chapters do not apply in this case.

3

communication is a 'threat' . . . [if] an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a threat of injury") (cleaned up). Section 3156(a)(4)(A) requires the threatened use of *physical force* against a person, while 18 U.S.C. § 875(c) criminalizes different conduct – a threat to *injure* another person. Using physical force against a person does not necessarily result in an injury, and suffering an injury does not necessarily require the use of physical force. Accordingly, the conduct criminalized by 18 U.S.C. § 875(c) does not match the definition of "crime of violence" in Section 3156(a)(4)(A), and 18 U.S.C. § 875(c) is therefore not a crime of violence under Section 3156(a)(4)(A).

Turning to Section 3156(a)(4)(B), that provision is unconstitutionally vague and does not apply. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1213-14 (2018) (explaining why 18 U.S.C. § 16(b) – which defines "crime of violence" the same as Section 3156(a)(4)(B) – is unconstitutionally vague). But even if that residual clause is not unconstitutional, the elements of a "crime of violence" under that clause are as follows:

> (i) The offense must be a felony;
> (ii) the offense must involve a 'risk that physical force may be used against the person or property of another;'
> (iii) that risk must result from the nature of the offense;
> (iv) the risk must be that the use of physical force would occur 'in the course of' the offense; and
> (v) the risk must be 'substantial.'

*Dillard*, 214 F.3d at 92-93. While 18 U.S.C. § 875(c) undoubtedly is a felony, that is the only element of "crime of violence" under Section 3156(a)(4)(B) it satisfies. In particular, 18 U.S.C. § 875(c) criminalizes only a *threat* to injure the person or property of another. Accordingly, there is no inherent risk "that physical force may be used" during "the course of the offense." *Dillard*, 214 F.3d at 93 (internal quotation marks omitted). Furthermore, conduct prohibited by 18 U.S.C. § 875(c) does not create a "substantial" risk that physical force may be used. The Second Circuit has

4

suggested that, to satisfy this element of Section 3156(a)(4)(B), "[i]t is sufficient that the risk be material, important, or significant." *Dillard*, 214 F.3d at 95. But, again, 18 U.S.C. § 875(c) only prohibits *threats* and therefore does not speak to any degree of risk of physical force, regardless of whether it is described as "substantial," "material," "important," or "significant."

For these reasons, 18 U.S.C. § 875(c) is not a crime of violence as that phrase is defined in the Bail Reform Act, rendering Section 3142(f)(1)(A) inapplicable. Accordingly, the Magistrate Judge erred in holding a detention hearing under that provision.

> **b. 18 U.S.C. § 875(c) Carries a Maximum Term of Imprisonment of Five Years, Not Ten.**

Even if the court decides that 18 U.S.C. § 875(c) is a crime of violence under the governing definition, the statutory maximum term of imprisonment for a violation of that provision is five years, not 10. Section 3142(f)(1)(A) permits a court to hold a detention hearing only in cases involving "crime[s] of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." Whether the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" is applicable to all three categories of cases as a series qualifier, or whether that phrase applies only to the last antecedent ("an offense listed in section 2332b(g)(5)(B)") has already been decided by this court in *United States v. Morelli*, No. 22-CR-0115 (N.D.N.Y.).

On February 1, 2023, Mr. Morelli pleaded guilty to 18 U.S.C. § 875(c). During the change of plea hearing, the government moved for Mr. Morelli's detention pending sentencing pursuant to 18 U.S.C. § 3143(a)(2). *See Morelli*, No. 22-CR-0115, Dkt. No. 42; Dkt. No. 97 at 21. Section 3143(a)(2) provides, in relevant part, that a court must detain a person pending sentencing if the crime of conviction is one "described in § 3142(f)(1)(A)," unless certain other findings are rendered by the court. 18 U.S.C. § 3143(a)(2). In response to the government, and citing a canvas

5

of case law, defense counsel argued that Section 3142(f)(1)(A) does not encompass 18 U.S.C. § 875(c) because the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" is a series qualifier that modifies all the types of cases listed in Section 3142(f)(1)(A). *Morelli*, No. 22-CR-0115, Dkt. No. 39 at 2; Dkt. No. 97 at 24-25.[2] Citing the authority provided by defense counsel, this court agreed that, in order for Section 3142(f)(1)(A) to apply, the underlying crime of violence must be one for which a maximum term of imprisonment of ten years or more is prescribed. *See Morelli*, No. 22-CR-0115, Dkt. No. 97 at 24 ("Ms. DiBella, I do have your chart, so the only case law that's before me is consistent with your interpretation of the case law, which is that it must be a crime of violence for which a maximum term of imprisonment of ten years or more is prescribed. And I am looking at the case of *United States versus Persico*, 2017 WL 3669554, at 3, and the case of *United States versus Madoff*, 586 F. Supp. 2d 240, at 247. So I accept that as the law.").

As this court alluded in Mr. Morelli's case, other courts have decided that § 3142(f)(1)(A) does not permit a detention hearing for crimes of violence that carry a maximum term of imprisonment of less than ten years. *See United States v. Paulino*, No. 19-CR-0054, 2020 WL 1847914, at *3 (S.D.N.Y. Apr. 13, 2020); *United States v. Persico*, No. 10-CR-0147, 2017 WL 3669554, at *3 (E.D.N.Y. Aug. 23, 2017); *United States v. Baldazo*, No. 11-CR-0077, 2012 WL 12947283, at *1 (N.D. Ind. Apr. 19, 2012); *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962 (965-66) (E.D. Wis. 2008).

And this makes sense because applying the series qualifier rule allows the list of items in Section 3142(f)(1)(A) to be read consistently and makes the "ten years or more" language the

---

[2] The Assistant Federal Public Defender in Mr. Morelli's case submitted a flow chart to the court ahead of the change of plea hearing. Having reviewed the docket, however, it does not appear that the chart was docketed as an exhibit to the hearing in that case. Counsel for Mr. Dai has located the flow chart and attached it to this memorandum of law for the court's reference.

harmonizer among the listed items. In contrast, applying the last antecedent rule would render the statute confusing and unclear. This is because 18 U.S.C. § 2332b(g)(5)(B) contains crimes that <u>simultaneously</u> are punishable by less than ten years imprisonment <u>and</u> crimes of violence. *See, e.g.,* 18 U.S.C. § 32(c) (punishable by a fine and/or up to five years imprisonment); 18 U.S.C. § 1363 (same); 18 U.S.C. § 2280(a)(2) (same). For defendants who are accused of these types of crimes under 18 U.S.C. § 2332b(g)(5)(B), it is unclear whether a detention hearing would be mandatory under Section 3142(f)(1)(A). Under the government's reading, those defendants would not be subject to a detention hearing because the "ten years or more" language mandates a detention hearing only for crimes under 18 U.S.C. § 2332b(g)(5)(B) that are punishable by ten years or more imprisonment. But that reading of the statute begs the question whether a detention hearing is mandatory when an individual is accused of a crime under 18 U.S.C. § 2332b(g)(5)(B) carrying a less-than 10-year minimum <u>and</u> the accused crime is also a crime of violence. It remains unclear which of the listed categories in Section 3142(f)(1)(A) applies in that case. This confusion illustrates why reading the "ten years or more" language consistently among the items listed makes the most logical sense.

At the very least, the competing interpretations of Section 3142(f)(1)(A)'s "ten years or more" language – coupled with the confusion about whether a detention hearing is mandatory when a person is accused of committing a crime under 18 U.S.C. § 2332b(g)(5)(B) that is both punishable by less than 10 years imprisonment and is crime of violence – mandate that the court apply the rule of lenity in Mr. Dai's favor. *See United States v. Davis*, 139 S. Ct. 2319, 2333 (2019) (explaining that the rule of lenity teaches "that ambiguities about . . . a criminal statute should be resolved in the defendant's favor"). Application of this rule is no more appropriate than in the pretrial detention context, where there is a presumption of innocence and a presumption of release

7

unless otherwise narrowly prescribed. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Because there is an open debate as to whether the "ten years or more" language in Section 3142(f)(1)(A) applies to all the items listed or only the last antecedent, the court should read Section 3142(f)(1)(A) as granting defendants more opportunities to retain their liberty than less. Accordingly, the court should find in Mr. Dai's favor and decide that the "ten years or more" language is a series qualifier.

For all these reasons, Section 3142(f)(1)(A) does not permit a detention hearing, and the Magistrate Judge erred in conducting one.

### 2. 18 U.S.C. § 3142(f)(2)

The Magistrate Judge also erred in relying on Section 3142(f)(2) because Mr. Dai does not pose a serious risk of flight. The Magistrate Judge's factual findings on this point were attenuated and speculative.

The detention order cited the following "facts" in support of the conclusion that Mr. Dai presents a serious risk of flight:

- Mr. Dai has family in China.
- Mr. Dai's father works in China approximately half the year.
- Mr. Dai's parents support him and have the financial resources "with regard to the ability for him to travel to [China]."
- Mr. Dai's mental health "is not under control" and "his behavior is unstable and erratic," as illustrated by suicidal ideations.
- Mr. Dai posted statements on the internet without signing his real name.

Dkt. No. 18 at 6. Respectfully, none of these findings are supported by the record.

While it is true that Mr. Dai's father works in China during part of the year, Mr. Dai himself has traveled to China only once in his life when he was approximately 11 years old. At the detention hearing, the government failed to proffer what specific family members are in China,

where those family members live, how often Mr. Dai speaks with them (if at all), or the kind of relationship he has with any of his family living in China. Accordingly, the Magistrate Judge's reliance on Mr. Dai's ties to China is based on two bare facts: (1) Mr. Dai's father works in China, and (2) Mr. Dai has family in China. But these facts are not enough to suggest that Mr. Dai is a serious risk of flight. To conclude otherwise would allow any court to find that any defendant is a serious risk of flight if a close family member works in another jurisdiction and/or has family in another jurisdiction. Moreover, Mr. Dai has told defense counsel that he never wants to return to China and that he does not keep in touch with his family living there. To this end, Mr. Dai has turned over his passport to defense counsel. As for his father's professional ties, they are to a university where he teaches, and Mr. Dai does not know the name of the university and cannot clearly articulate even what his father teaches. In any event, Mr. Dai's father's ties to China are now moot because his father has returned from China.

As for the Magistrate Judge's finding that Mr. Dai's parents can financially support Mr. Dai's flight from the United States to China, there is absolutely no evidence or proffer from the government to support such a conclusion. Mr. Dai's parents work hard, but they are not wealthy and do not have excess funds (much less the inclination) to send their child overseas.

The Magistrate Judge further erred in relying on Mr. Dai's mental health in concluding that Mr. Dai presents a serious risk of flight. As argued at the detention hearing, a person's suicidal ideations do not create a serious risk of flight. *See United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) ("[T]he mere existence of suicide risk is not itself sufficient to justify pretrial detention."). This is because a risk of suicide "is distinct from a risk of flight of nonappearance." *Storme*, 83 F.4th at 1083. "[T]he plain import of the term 'flight' connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction." *Id.* This is why magistrate

judges routinely impose travel restrictions and require defendants to surrender passports—all to mitigate the risk of flight from a jurisdiction. If a defendant's death constituted a form of nonappearance, judges could detain defendants upon a showing of a sufficient risk of death, including one created by age or poor health. *Id.*

Finally, there is no basis for believing that Mr. Dai will flee if released based on the fact that he anonymously signed his internet postings. Mr. Dai has been straightforward and candid with law enforcement since his first interview, and he has apologized for his conduct. His brief moment of anonymity has long vanished.

The statutory maximum term of imprisonment in this case is five years. 18 U.S.C. § 875(c). The applicable sentencing guidelines in this case expose Mr. Dai to no more than 33 months imprisonment. Given this limited exposure to imprisonment, the government has failed to establish any motivation for Mr. Dai – a vulnerable, young college student – to flee the central and western New York areas he calls home.

For the reasons discussed above, the Magistrate Judge erred in finding that Mr. Dai presents a serious risk of flight under Section 3142(f)(2)(A), and the Magistrate Judge therefore was not authorized to hold a detention hearing.

## C. The Magistrate Judge's Factual Findings Were Clearly Erroneous.

Even assuming the Magistrate Judge was authorized to hold a detention hearing in this matter, the facts do not support detention. The factors to be considered when determining whether release on conditions is appropriate are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community that would be posed by the person's release. *See*

18 U.S.C. § 3142(g). In considering each of these factors, the Magistrate Judge rendered erroneous factual findings.

1. **Nature and Circumstances of the Offense**

As explained in the detention hearing, Mr. Dai is extremely bright and stays informed on current world events. As he witnessed the news media's coverage of the recent conflict between Israel and Hamas, he became concerned that some media was portraying Hamas as sympathetic. In particular, a reputable news organization mistakenly reported that Israel was responsible for bombing Gaza City Hospital. Around this same time, a professor at Mr. Dai's university expressed public "exhilaration" at Hamas' attacks. In light of these reports, and feeling confused about how anyone could publish or espouse sympathetic views for Hamas, Mr. Dai decided to take it upon himself to enlighten his community about Hamas' beliefs and rhetoric by posting anonymously to Greekrank.com. It was a shortsighted decision, and he has apologized for his conduct, but this explanation stands in stark contrast to the picture painted by the government and the Magistrate Judge in her decision detaining Mr. Dai.

Based on their descriptions of Mr. Dai's conduct and the absence of any nod towards his explanation, both the government and the Magistrate Judge seem inclined to let the world think that Mr. Dai espoused the rhetoric he posted as his own, that he carries hatred for Jewish people in his heart, and that he had access to weapons that would make it easy for him to carry out his public comments. To the contrary, as demonstrated in the letters of support submitted by the defense, Mr. Dai is a kind, gentle, loving, inclusive young man. The katana sword and gun cited by the government and Magistrate Judge were found at his home in Pittsford, New York, not in Ithaca, and the gun had never been opened or used before. In short, the nature and circumstances

of the offense, while serious, are mitigated by Mr. Dai's intentions, state of mind, and realistic access to weapons.

## 2. The Weight of the Evidence

In considering the weight of the evidence, the government and the Magistrate Judge heavily relied on Mr. Dai's admissions to law enforcement during a seven-hour interview. Both are under the mistaken belief, however, that Mr. Dai's statements were voluntary. They were not. Law enforcement did not read Mr. Dai his *Miranda* rights, and any statements provided were in violation of his constitutional rights. Accordingly, this evidence is not reliable.

## 3. The History and Characteristics of the Person

Mr. Dai is an intelligent, bright young man. In high school, he was an excellent student and had many friends. He participated in extra-curricular activities, like tennis and Science Olympiad. His relationships with others demonstrate he is a loving, caring person. When he was only 10 years old, he helped care for his mom during her cancer treatment. When a high school teacher retired, Mr. Dai wrote him a letter reflecting the impact the teacher's lessons about kindness in a divisive world had on him.

As Mr. Dai transitioned to college during the pandemic, however, he became increasingly isolated, in part, because of his social tendencies described in letters of support by his friends from high school. Mr. Dai has social and emotional characteristics that are not like other people. As one friend described, Mr. Dai "had trouble socializing and fitting into the social norms" during high school. It is likely that Mr. Dai has undiagnosed developmental, social, and/or emotional differences that account for these difficulties. Nevertheless, Mr. Dai is described as a person that never retaliated against bullies, has maintained his family's support, and has repeatedly tried to

return to college after leaves of absences. These are the kinds of behaviors that reflect Mr. Dai's true nature and are absent from the Magistrate Judge's detention order.

It is no secret that Mr. Dai's mental health has deteriorated since beginning college. He has a diagnosis of major depressive disorder and has sought treatment. The medications Mr. Dai began taking shortly before the incidents in this case were not working, and he told his mother as much. Mr. Dai's suicidal ideations, however, while real, were entirely overwrought by the Magistrate Judge at the hearing and in her written decision. In particular, the Magistrate Judge focused on Mr. Dai's report to law enforcement that one method he briefly considered was taking control of the steering wheel of his mother's vehicle while she was driving. Critically, the Magistrate Judge failed to contextualize this idea. During his seven-hour interview with law enforcement, Mr. Dai discussed many ideas for how to kill himself. He briefly paused to discuss only one – the one method that he attempted. He dwelled on none of the other ideas, including the idea involving his mother.

Contrary to the government's and Magistrate Judge's positions, Mr. Dai's mental health serves as a basis for *release*, not *detention*. He is a young man with limited world experiences. His parents and brother have been his consistent, unwavering support system throughout his life. To be separated from them perpetuates the isolation and loneliness that contribute to his depression. Moreover, while detained, Mr. Dai remains on the same medication he reported as having counteractive effects. He needs professional mental health care from his known providers, alongside the support of his family. Defense counsel has also scheduled to have Mr. Dai evaluated by an expert for any undiagnosed developmental, social, and/or emotional differences on January 4, 2024.

### 4. The Nature and Seriousness of the Danger to the Community

The Magistrate Judge cited to the online postings made by Mr. Dai, Mr. Dai's mental health, and Mr. Dai's "apparent . . . access to a firearm and sword" as a basis for finding Mr. Dai is a danger to the community. Addressing these items in reverse order, Mr. Dai no longer has access to any weapons because law enforcement confiscated them. In any event, Mr. Dai is not, and has never been, violent or known to use weapons of any kind.

As argued above and at the detention hearing, Mr. Dai's mental health and suicidal ideations are not a basis for determining he is a danger to the community. The Magistrate Judge repeatedly described Mr. Dai as "unstable" and/or behaving "erratically," but there is no reliable evidence or proffer of this that reflects a risk of danger to anyone but himself. Because suicidal ideations do not risk harm to "others" as required under Section 3142(e), it is not a basis for detention.

As already discussed, Mr. Dai's motivations for his conduct were not malicious or hateful against Jewish people. His misguided attempts at Jewish solidarity and support are difficult to understand but they made sense to Mr. Dai, whose brain operates and thinks differently than the rest of us. Moreover, just four hours after the postings, and before law enforcement had a chance to confront him, Mr. Dai publicly apologized for his conduct. Since that time, he has demonstrated remorse and regret. Given his explanations of what occurred and the overwhelming support his friends and family have demonstrated since his arrest, this court should discredit the unfounded characterizations of Mr. Dai as unstable and a danger to his community.

**D. There Are Conditions of Release That Would Assure the Reappearance of Mr. Dai and the Safety of the Community.**

The Magistrate Judge conclusorily decided no conditions or combination of conditions exist that would mitigate against Mr. Dai's alleged risk of flight and risk of danger to the

community. She did not articulate any conditions or explain why they would not be appropriate. Instead, she just stated her belief that none existed. This conclusion was not supported by the record and was an error.

As to the supposed flight risk Mr. Dai poses, defense counsel has Mr. Dai's passport. Mr. Dai has no known current ties to any community in the United States other than Pittsford and Ithaca. Mr. Dai does not have his own vehicle, but the court could restrict and/or prohibit Mr. Dai's access to his parents' vehicles as a condition of release.

As to the alleged risk Mr. Dai poses to others and/or his community, the court could set any number of conditions of release, including directing Probation to monitor him, restricting his access to the internet, and/or directing home confinement at his parents' home with exceptions for medical and mental health care.

Accordingly, the court could easily subject Mr. Dai to conditions of release that would mitigate against any risk of flight and risk of danger to the community.

## CONCLUSION

Mr. Dai requests the court reverse the Magistrate Judge's order and release him from custody pending trial.

DATED:	December 4, 2023	Respectfully submitted,

LISA A. PEEBLES
Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

TO:	Mr. Geoffrey Brown, AUSA (via CM/ECF)
	Mr. Stephen Green, AUSA (via CM/ECF)
	Mr. Patrick Dai (via USPS)